1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PRAKASH NARAYAN,                      No.  2:19-cv-0466-TLN-CKD PS

12            Plaintiff,

13        v.                               ORDER & FINDINGS AND
                                           RECOMMENDATIONS
14   COUNTY OF SACRAMENTO, et al.,
                                           (ECF Nos. 138, 141, 143, 159, 163)
15            Defendants.

16

17

18        Presently before the court are a dispositive motion for summary judgment by the last

19   remaining defendants in this action, and multiple surrounding motions by pro se plaintiff Prakash

20   Narayan.[1]  (ECF Nos. 138, 141, 143, 159, 163.)  Plaintiff's motions consist of (1) a motion for

21   leave to amend the complaint (ECF Nos. 138, 141)[2]; (2) a motion to vacate the undersigned's

22   October 15, 2021 order modifying the prior Scheduling Order (ECF No. 143); and (3) an

23   amended ex parte application to enter default judgment in plaintiff's favor (ECF No. 163).  All of

24   _____

25   [1]      Because plaintiff is self-represented, all pretrial proceedings are referred to the
     undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21).

26   [2]      Plaintiff's notice of motion (ECF No. 141) was received by the court several days after his
27   memorandum in support with the attached proposed amended complaint (ECF No. 138).
     Although these documents were docketed as separate motions to amend, they are in fact part and
28   parcel of the same motion.

                                              1

1   the motions, except the ex parte application, have been fully briefed; and the court heard remote

2   arguments on plaintiff's motion to amend on December 8, 2021.  (See ECF No. 154.)  The court

3   deemed hearings unnecessary for the other motions, which were submitted on the papers pursuant

4   to Local Rule 230(g).  Having considered the parties' arguments, the law, and the relevant facts,

5   the court DENIES plaintiff's motion to vacate the court's October 15th schedule modification

6   order (ECF No. 143) and recommends GRANTING defendants' dispositive motion for summary

7   judgment (ECF No. 159) and DENYING plaintiff's motion to amend and application for default

8   judgment (ECF Nos. 138, 141, 163).

9   **I.      BACKGROUND**

10          Plaintiff filed this action in March 2019 against three sets of defendants:  Wells Fargo

11  Bank; the City of Sacramento; and the County of Sacramento, the Sacramento County Assessor,

12  and Sacramento County Tax Collector Ben Lamera (collectively, "the County defendants").

13  (ECF No. 1.)  Overall, plaintiff alleges unfair debt collection practices arising from the improper

14  addition of delinquent public utilities charges to his County property tax bills over several years.

15          The court granted plaintiff leave to proceed in forma pauperis, but in screening the

16  complaint under 28 U.S.C. § 1915(e) found that the complaint failed to establish the court's

17  subject matter jurisdiction because it failed to state a federal claim.  (ECF Nos. 2, 4.)  The court

18  granted plaintiff leave to amend, and in May 2019, plaintiff filed a First Amended Complaint

19  ("FAC") against the same defendants.  (ECF No. 12.)  In a June 27, 2019 re-screening order, the

20  court found the FAC adequately pleaded the elements of a Fair Debt Collection Practices Act

21  ("FDCPA") claim—"if just barely"—and ordered service of the FAC on defendants.  (ECF

22  No. 13.)  The County defendants filed an answer to the FAC on July 18, 2019 (ECF No. 17), and

23  the FAC remains the currently operative complaint.

24          The FAC asserts five causes of action under the FDCPA and two ostensible causes of

25  action for "t[a]mpering with public records" and "public corruption."  (ECF No. 12 at 1-9.)  For

26  the FDCPA claims, plaintiff alleges that he received "deceptive" County property tax bills that

27  included assessments for unpaid City utility debts without him ever receiving a record of what the

28  debts were for.  (Id. at 1-2.)  Wells Fargo—plaintiff's mortgage lender—paid these "phony"

assessments of "several thousands" of dollars for several years, out of plaintiff's mortgage escrow account.  (Id. at 2-3.)  Plaintiff claims that the County defendants violated the FDCPA as well as California Health and Safety Code § 5473 by (1) adding the City debts to the County property tax rolls without validating the debts and without approval from the County Board of Supervisors, and (2) failing to produce records substantiating these debts upon request.  (Id. at 2-3, 8.)  The tampering claim does not include allegations against any County defendants; and the corruption claim against the County is that by not verifying the debts being added to plaintiff's property taxes, the County aided and abetted the City's corrupt conduct.  (Id. at 8-10.)

In early 2020, the court first dismissed Wells Fargo and then the City from the action, in part because neither qualified as a "debt collector" within the meaning of the FDCPA.  (ECF Nos. 50 (Wells Fargo F&Rs) at 4-5; 61 (order adopting); 67 at 3-4 (City F&Rs); 59 (order adopting).)  The County defendants did not move to dismiss, having previously filed an answer.

In July 2020, the court issued a Pretrial Scheduling Order to govern the remainder of the litigation between plaintiff and the County defendants.  (ECF No. 85.)  As relevant, the Scheduling Order set a July 30, 2021 discovery deadline and a September 10, 2021 deadline for all non-discovery law and motion to be completed.  (Id. at 2-3.)  The Scheduling Order also provided that "[n]o further joinder of parties or amendments to pleadings is permitted except with leave of court, good cause having been shown."  (Id. at 2.)

Since the filing of the FAC, plaintiff has twice tried to further amend the complaint (not counting the present motion to amend).  In June 2020, plaintiff filed a purported Second Amended Complaint, which the court ordered stricken because it was filed without defendants' consent and without leave of court.  (ECF Nos. 77, 79.)  In late July 2020, plaintiff moved for leave to amend the complaint to add the "sewer department" as a new defendant for also violating California Health and Safety Code § 5473 by adding sewer charges to plaintiff's property taxes without the County Board of Supervisors' approval.  (ECF No. 89.)  The court denied leave to amend both because plaintiff failed to attach a proposed amended complaint and because of the potential prejudice to defendants in having to defend against arguably unrelated claims after the action had been pending for more than a year.  (ECF No. 104 at 3.)

3

Since then, the docket has been filled primarily with plaintiff's various attempts to disqualify the undersigned from continuing to preside over this case.  Because none of plaintiff's motions alleged facts supporting plaintiff's assertions of bias, the undersigned consistently denied the motions without referral to another judge.  See Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1388 (9th Cir. 1988) (only after determining the legal sufficiency of § 144 affidavit is a judge obligated to reassign decision on merits to another judge; where "bias or prejudice alleged arose from conduct during the judicial proceeding," the motion and affidavit were legally insufficient).  Plaintiff's variously styled motions objected to the court purportedly misapplying the filing deadlines for responsive pleadings and other papers—and for ruling against plaintiff on his successive motions without any further oral argument since the initial hearing on Wells Fargo's motion to dismiss.  (See, e.g., ECF Nos. 95, 105, 108, 113, 117, 119-124, 130-31, 135.)

On September 9, 2021, the County defendants moved to modify the Scheduling Order to allow their filing of a dispositive summary judgment motion beyond the September 10th deadline set for dispositive motions.  (ECF No. 125.)  On October 15, 2021, the court granted defendants' motion.  (ECF No. 139, hereinafter "Schedule Modification Order.")  Based on the briefing presented by both sides, the court found good cause to both (a) re-open discovery to permit plaintiff to conduct any properly noticed depositions of County officials no later than November 19, 2021, and (b) permit the parties to file any summary judgment motion so that it could be heard on or before January 19, 2022.  (Id. at 8.)  The court specified that, under the Local Rules, that would require such motion to be filed and noticed no later than December 22, 2021.  (Id.)

On December 17, 2021, the County defendants timely filed their motion for summary judgment which is now before the court.  (ECF No. 159.)  By that time, plaintiff had filed an intervening motion to further amend the complaint and to vacate the Schedule Modification Order.  (ECF Nos. 138, 141, 143.)  Accordingly, the court addresses plaintiffs' motions—along with his later-filed ex parte application for default judgment—before turning to the merits of defendants' summary judgment motion.

////

4

1    **II.      PLAINTIFF'S MOTION TO AMEND**

2           On October 12, 2021, a few days before the court issued its Schedule Modification Order,

3    plaintiff filed the instant motion to amend.  (ECF Nos. 141 (notice of motion), 138 (memo &

4    proposed amended complaint).)  At the court's prompting, plaintiff noticed the motion to amend

5    for hearing on December 8, 2021.  (ECF Nos. 140, 142.)  The County defendants filed their

6    opposition on November 24, 2021, and plaintiff filed a reply and an uninvited additional amended

7    reply.  (ECF Nos. 150, 151, 153.)  Before the hearing on the motion, plaintiff also filed a "Protest

8    Under First Amendment Rights," again complaining of the lack of oral argument opportunities

9    and the undersigned's purported bias against him.  (ECF No. 152.)

10          The court held a remote hearing on the motion to amend, as scheduled, on December 8,

11   2021, with counsel appearing for the County defendants and plaintiff appearing on his own

12   behalf.  (ECF No. 154.)  The court invited plaintiff to give any arguments he wished to provide on

13   his motion, and plaintiff argued (as he did in his reply papers) that the defendants' opposition was

14   untimely.  Plaintiff stated that he did not wish to say anything further, due to his belief that the

15   undersigned was illegally remaining as the judge in this case despite his recusal motions.  County

16   counsel represented that defendants' opposition was timely served and filed 14 days before the

17   hearing, in compliance with the Local Rules, and was also emailed to plaintiff the same day.

18          At the hearing, the court informed the parties that it was taking the motion under

19   submission, along with plaintiff's separately filed November 15, 2021 motion to vacate the

20   Schedule Modification Order (ECF No. 143).  (See ECF Nos. 154, 156.)  The court also informed

21   the parties that in the interim neither of plaintiff's motions displaced the current scheduling

22   deadlines, so dispositive motions were still due to be filed by December 22, 2021.

23          **A.  Plaintiff's Proposed Amended Complaint**

24          Plaintiff styles his proposed amended complaint, attached to his motion, as a "Third

25   Amended Complaint."  (ECF No. 138 at 6-28.)  However, because plaintiff was never granted

26   leave to file an amended complaint beyond the present FAC, this would in fact be his Second

27   Amended Complaint—if leave were granted.  The court simply refers to the document as the

28   "proposed amended complaint" and recommends denying leave to amend because the proposed

5

1    amended complaint would be futile and highly prejudicial at this late stage in the case.

2           Through the proposed amended complaint, plaintiff seeks to add some 12 new causes of

3    action based on allegedly revelatory admissions he received from County counsel while litigating

4    this case.  (See ECF No. 141 at 1-2.)  Plaintiff argues that, during the discovery process, he

5    learned that the County does not know the details of the utility bills or other City charges that

6    were added to the County tax rolls he is contesting—nor does it possess records of the underlying

7    bills.  (Id.; ECF No. 138 at 1-2, 19, 23.)  Based on these discoveries, plaintiff seeks to add ten

8    purported causes of action under federal criminal statues (multiple sections of title 18 of the U.S.

9    Code, and 34 U.S.C. § 10272) regarding concealment and false statements; a cause of action

10   under the Fair Credit Billing Act, 15 U.S.C. §§ 1666-1666j ("FCBA"); and a purported cause of

11   action under IRS Publication 583, requiring entities to keep federal tax records for at least five

12   years.  (ECF No. 138 at 7-15.)

13          The County defendants oppose the motion to amend on the grounds that the proposed

14   amendment is both futile and brought in bad faith.  (ECF Nos. 150, 150.1 (attaching discovery

15   responses, production, and communications).)  Plaintiff's replies argue only that the motion

16   should be granted as unopposed because defendants' opposition should be found untimely.  (ECF

17   Nos. 151, 153.)

18          **B. <u>Legal Standard</u>**

19          After a party has amended as a matter of course, further amendment is allowed only with

20   consent of the opposing parties or leave of the court.  Fed. R. Civ. P. 15(a).  A court should freely

21   grant leave to amend a pleading when justice so requires.  Id.  "However, liberality in granting

22   leave to amend is subject to several limitations.  Those limitations include undue prejudice to the

23   opposing party, bad faith by the movant, futility, and undue delay."  Cafasso, U.S. ex rel. v. Gen.

24   Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (cleaned up).  Absent prejudice,

25   futility, or a strong showing of any of the remaining factors, a presumption in favor of granting

26   leave to amend exists under Rule 15(a).  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048,

27   1052 (9th Cir. 2003); Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone

28   can justify the denial of a motion to amend.").  Still, granting leave to amend is a matter of

6

1   discretion, and the court's discretion to deny leave is "particularly broad" in cases such as this one

2   where the plaintiff has previously amended the complaint.  Cafasso, 637 F.3d at 1058.

3   **C. Analysis**

4   In light of plaintiff's prior opportunity to amend and the futility of the proposed

5   amendment, the undersigned recommends denying leave to amend.  Plaintiff's proposed amended

6   complaint is entirely futile because it fails to state any cognizable claim against the remaining

7   defendants.  Ten of the twelve proposed new causes of action assert violations of provisions

8   within Title 18 of the U.S. Code, the federal criminal code.  (ECF No. 138 at 7-14.)  However,

9   plaintiff as a private citizen has no authority to bring claims under criminal statutes.  See Allen v.

10  Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of action for

11  violation of criminal statutes).  The other two proposed causes of action, under the FCBA and

12  IRS Publication 583, are equally futile.

13  The FCBA, which amended the Truth in Lending Act, governs relationships between

14  borrowers and lenders, primarily in the context of credit cards.  See Am. Exp. Co. v. Koerner, 452

15  U.S. 233, 234 (1981); Lyon v. Chase Bank USA, N.A., 656 F.3d 877, 880 (9th Cir. 2011)

16  ("Congress enacted the FCBA in order to regulate billing disputes involving 'open end consumer

17  credit plans.'" (quoting 15 U.S.C. § 1666)).  A lender, or "creditor" under the FCBA is one who

18  "regularly extends . . . consumer credit" and "is the person to whom the debt arising from the

19  consumer credit transaction is initially payable."  15 U.S.C. § 1602(g); see Hasan v. Chase Bank

20  USA, N.A., 880 F.3d 1217, 1220 (10th Cir. 2018).

21  In addition to failing to specify which of the many provisions of the FCBA he wishes to

22  assert, plaintiff fails to demonstrate how any of the County defendants qualify as a "creditor" who

23  would be subject to the FCBA in the first place.  The County of Sacramento and its property tax

24  assessors and collectors are plainly not in any kind of lending relationship with plaintiff.  They

25  merely notified plaintiff of his existing debts, which did not arise through any original extension

26  of credit to plaintiff.  Accordingly, the proposed addition of a claim under the FCBA is futile.

27  As to IRS Publication 583, "IRS publications, though aimed at explaining existing tax law

28  to taxpayers, do not have the force of law."  United States v. Josephberg, 562 F.3d 478, 498 (2d

1    Cir. 2009).  Plaintiff provides no basis for imputing a private cause of action for a purported

2    violation of this IRS publication.  See Jaurez v. Dimon, 2015 WL 5297501, at *3 (C.D. Ill.

3    Sept. 10, 2015) (dismissing with prejudice claims under IRS Code of Publications because it "is

4    not a statute and does not provide a cause of action").  Therefore, this proposed cause of action is

5    futile as well.

6         While there are several other reasons to deny further leave to amend as well, the fact that

7    none of the proposed claims could possibly proceed against the named defendants is sufficient,

8    alone, to deny the motion.  See Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility

9    alone can justify the denial of a motion to amend.").

10        **D.  Plaintiff's Untimeliness & Default Arguments**

11         Throughout this litigation, plaintiff has misunderstood and misapplied the relevant Federal

12    Rules and Local Rules governing response times—both as to pleadings and motions—despite the

13    court's many attempts to explain them.  In reply to defendants' opposition to this motion, plaintiff

14    argues that the motion should be treated as unopposed because (a) the opposition was not filed

15    within 21 days of the filing of the motion to amend, and (b) he did not receive the opposition until

16    December 1, 2021, leaving him fewer than 21 days to reply.  (ECF Nos. 151 at 2, 153.)

17         The County defendants' opposition was timely filed because it was filed and served 14

18    days before the noticed hearing date.  See Local Rule 230(c) (oppositions to motions "shall be

19    filed and served not less than fourteen (14) days preceding the noticed (or continued) hearing

20    date").  Although it is regrettable if plaintiff did not receive the opposition papers in the mail until

21    December 1st, service was effective upon placing the documents in the mail on November 24th—

22    and the court notes the papers were also sent by courtesy email on November 24th.  (ECF

23    No. 150.2.)  Contrary to plaintiff's belief that he deserved 21 days to reply to the opposition, the

24    court's Local Rules ensure a moving party only seven (7) days to reply, by making the reply due

25    7 days preceding the hearing date.  See Local Rule 230(d).  The court acknowledges that this

26    short deadline can be difficult for pro se litigants to meet, but those are the rules that all litigants

27    must follow—and, in any event, the court has in fact considered both of the replies that plaintiff

28    filed for this motion.

Most importantly, as it also factors into plaintiff's request for default judgment (addressed next), defendants were not required to respond to plaintiff's motion to amend within 21 days of its filing.  The filing of a motion for *leave* to amend is not the same as filing an actual amended complaint, which only occurs (at this stage) once the court has granted permission.  If the court were to grant the instant motion to amend, defendants would then have a specified amount of time—from the date of service of the approved amended complaint—to substantively respond to the complaint.  See Fed. R. Civ. P. 15(a)(3) (setting minimum response time of at least 14 days from service of the amended pleading unless the court orders otherwise).  However, plaintiff's filing of his *proposed* amended complaint as an attachment to his motion for leave to amend did not trigger this deadline.  It only triggered the normal motion-opposition deadline requiring an opposition brief 14 days prior to the noticed hearing date.  Because defendants met this deadline, their opposition was not untimely.

### III.     EX PARTE APPLICATION FOR DEFAULT JUDGMENT

Under the mistaken belief that the County defendants were required to respond to his proposed amended complaint no later than November 12, 2021, plaintiff on November 15, 2021 filed three requests for the Clerk of Court to enter default as to each of the County defendants. (ECF Nos. 144, 145, 147.)  Noting that these defendants' answer had been filed in response to the original FAC, the Clerk declined these requests.  (ECF Nos. 146, 148, 149.)

On January 7, 2022, after the County defendants filed the now-pending motion for summary judgment, plaintiff filed the instant ex parte application for the court to enter default judgment against the County defendants—and an amended application on January 11, 2022. (ECF Nos. 162, 163.)  Defendants filed oppositions to both ex parte applications.  (ECF Nos. 165, 165.1.)  On the same mistaken theory, plaintiff argues that the Clerk improperly denied his requests for entry of default.  (See ECF Nos. 162 at 2, 163 at 3-6.)  Plaintiff also resurrects an argument asserted throughout this litigation—usually within a motion for recusal—that the County defendants' July 18, 2019 answer was an untimely response to the FAC.  (ECF No. 163 at 4.)

As just explained, no response to plaintiff's October 2021 proposed amended complaint was (or is) required because he has not been granted leave to file that proposed amended complaint. The County defendants filed an answer (ECF No. 17) to the only complaint operative in this action, the FAC, so the Clerk properly declined to enter default against them.[3] Plaintiff's ex parte application for default judgment on the so-called Third Amended Complaint, in addition to being procedurally improper, should therefore be denied on its merits.

## MOTION TO VACATE SCHEDULE MODIFICATION ORDER

Plaintiff's final motion to be addressed here is his November 15, 2021 motion to vacate the Schedule Modification Order issued by the undersigned on October 15, 2021. (ECF No. 143, moving to vacate ECF No. 139.) The motion was fully briefed and taken under submission. (ECF Nos. 143, 155-158.[4]) Plaintiff argues that the court's Schedule Modification Order extending the discovery and dispositive motions deadlines should be vacated because he believes the undersigned is acting as an "illegal judge" by continuing to preside in the case despite plaintiff filing prior motions for recusal alleging bias and prejudice. (See generally ECF No. 143.)

No part of plaintiff's "motion to vacate" challenges the substance of the Schedule Modification Order. Plaintiff simply argues that the court's decision to grant the County defendants' requested extension of the dispositive-motions deadline was another example of the undersigned's bias in favor of defendants and against plaintiff. Plaintiff cites 28 U.S.C. § 144 throughout his moving papers, arguing that his prior recusal motions make any and all of the undersigned's orders since April 2021 "illegal." Therefore, the undersigned construes this

---

[3]    In the Schedule Modification Order (which remains valid, as discussed in the next section), the court addressed plaintiff's argument attacking the timeliness of defendants' answer. (ECF No. 139 at 2-3, 5-6.) In addition to the analysis contained therein which the undersigned reaffirms, the court notes that the County defendants filed their answer to the FAC on July 18, 2019—within 21 days of the court's re-screening order finding jurisdiction based on the FAC and directing service of the FAC on all defendants. (ECF Nos. 13, 17.)

[4]    Plaintiff's original reply was inadvertently captioned as "Plaintiff Disclosure," which he later corrected with an amended reply. (ECF Nos. 157, 158.)

1    "motion to vacate" as yet another variation of plaintiff's many previous motions for judicial

2    disqualification.[5]

3        As he has on many prior occasions, plaintiff argues that the granting of defendants'

4    motion is an "indication of super prejudice, biased racist" because the undersigned has denied

5    basically all of plaintiff's motions filed over the course of this case—and because his filing of a

6    § 144 motion should have automatically disqualified the undersigned from proceeding as judge in

7    this case.  (ECF No. 143 at 2-3, 5, 8.)

8        In an order signed on May 6, 2021, the court provided a detailed explanation of why

9    plaintiff's formulaic recusal motions were insufficient.  (ECF No. 115.)  The court discussed both

10   28 U.S.C. § 144 (establishing procedure for litigants to move for judicial recusal) and 28 U.S.C.

11   § 455 (the self-enforced recusal statute) and concluded that plaintiff's motions did not allege any

12   specific facts showing bias or prejudice based on anything other than the court's legal rulings in

13   the case.  (Id.)  See Liteky v. United States, 510 U.S. 540, 555 (1994) (unless judge's actions

14   "display a deep-seated favoritism or antagonism that would make fair judgment impossible,"

15   judicial bias or prejudice formed during current or prior proceedings is insufficient for recusal)

16   (discussing § 455(a)).

17   ////

18

19   ─────────────────────

20   [5]    The court does not construe the motion as Objections to the Schedule Modification Order,
     to be addressed by the District Judge, because it was filed far more than 14 days after the
21   Schedule Modification Order issued.  See Fed. R. Civ. P. 72(a) (permitting objections within 14
     days of service of order and stating that a "party may not assign as error a defect in the order not
22   timely objected to).

23       Further, even if the motion could be construed as a substantive request to revise the
     Schedule Modification Order, it does not even attempt to satisfy the criteria for modifying a
24   previously issued order.  See Fed. R. Civ. P 54(b) (permitting revision of any order prior to entry
     of final judgment); Persistence Software, Inc. v. Object People, Inc., 200 F.R.D. 626, 627 (N.D.
25   Cal. 2001) ("[A] court should generally leave a previous decision undisturbed absent a showing
     that it either represented clear error or would work a manifest injustice."); see also Local
26   Rule 230(j) (requiring the moving party to provide "what new or different facts or circumstances
     are claimed to exist which did not exist or were not shown upon such prior motion" or "what
27   other grounds exist for the motion" and "why the facts or circumstances were not shown at the
     time of the prior motion").

28

Anticipating further recusal motions, the undersigned advised that such motions would be summarily denied unless they provided the requisite specificity and a basis in something other than the court's rulings in the case.  (ECF No. 115 at 4.)  Because each of plaintiff's subsequent recusal motions leveled only conclusory assertions of bias, they were summarily denied as warned.

The instant motion to vacate fares no better.  Plaintiff flatly repeats his assertions that the undersigned must be "racist," "prejudice," and "biased" based solely on having denied most of plaintiff's motions and granted most of defendants' motions.  (ECF No. 143 at 2-3, 5, 8.)  As plaintiff was informed before, the mere filing of a § 144 motion does not automatically terminate a judge's power to continue with any given case.  Rather, § 144 requires a "timely and sufficient affidavit" stating "the facts and the reasons for the belief that bias or prejudice exists."  28 U.S.C. § 144.  Only if the movant's affidavit is legally sufficient must the recusal motion be heard by a judge other than the target of the motion.  United States v. Scholl, 166 F.3d 964, 977 (9th Cir. 1999), as amended on denial of reh'g (Mar. 17, 1999); Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1388 (9th Cir. 1988).  Plaintiff has never submitted a legally sufficient affidavit or even argument for recusal.  Therefore, the undersigned continues to dutifully serve as the magistrate judge assigned to this case.  See United States v. Holland, 519 F.3d 909, 912 (9th Cir. 2008) ("We are as bound to recuse ourselves when the law and facts require as we are to hear cases when there is no reasonable factual basis for recusal."); United States v. Sierra Pac. Indus., 759 F. Supp. 2d 1198, 1200-01 (E.D. Cal. 2010) (judges "must not simply recuse out of an abundance of caution when the facts do not warrant recusal. Rather, there is an equally compelling obligation not to recuse where recusal in not appropriate.").

A reasonable person reviewing the record in this case would not question the undersigned's impartiality.  See Holland, 519 F.3d at 913.  The undersigned's rulings display no "deep-seated favoritism or antagonism that would make fair judgment impossible."  See Liteky, 510 U.S. at 555.  The fact that defendants have succeeded on more of their motions than has plaintiff is owing to the merits of their respective legal positions, not due to any prejudice against plaintiff as an individual.  Plaintiff is, of course, free to challenge the undersigned's rulings on the

instant motions (and prior motions) in objections directed to the assigned District Judge, and then in any appeal plaintiff might wish to file.  However, these adverse rulings do not provide a basis for recusal.  Accordingly, plaintiff's motion to vacate—construed as a further motion to recuse— is denied.

## IV.   **MOTION FOR SUMMARY JUDGMENT**

On December 17, 2021, shortly before the December 22nd deadline for filing dispositive motions, the County defendants filed their motion for summary judgment and supporting papers. (ECF Nos. 159-159.5.)  The motion, which has been fully briefed, was taken under submission. (ECF Nos. 160, 161, 164.)

### A.   **Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A shifting burden of proof governs motions for summary judgment under Rule 56. Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Id. at 1102-03 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

1    If the moving party meets its initial responsibility, the opposing party must establish that a

2    genuine dispute as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith

3    Radio Corp., 475 U.S. 574, 585-87 (1986).  The opposing party must demonstrate (1) that the fact

4    in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing

5    law," and (2) that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could

6    return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

7    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

8    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

9    specific facts in the form of affidavits, and/or admissible discovery material, in support of its

10   contention that the dispute exists.  See Fed. R. Civ. P. 56(c); In re Oracle Corp. Sec. Litig., 627

11   F.3d at 387 (opposing party "must show more than the mere existence of a scintilla of evidence")

12   (citing Anderson, 477 U.S. at 252).

13   "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

14   court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

15   v. Cent. Costa Cty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).

16   **B.  Analysis**

17   The County defendants move for summary judgment as to all claims asserted against them

18   in the FAC.  (ECF No. 159 at 2.)  As best the court can tell, the FAC asserts against the County

19   defendants (1) various violations of the Fair Debt Collection Practices Act ("FDCPA"),

20   (2) violation of California Health and Safety Code § 5473, and (3) a purported claim of aiding

21   and abetting "public corruption."  (ECF No. 12 at 1-10.)  The court addresses each in turn.

22        *1.  FDCPA Claims*

23   The FAC contains four FDCPA claims against the County defendants, asserting violations

24   of FDCPA § 812, 15 U.S.C. § 1692j (furnishing deceptive forms) (ECF No. 12 at 1); FDCPA

25   § 809, 15 U.S.C. § 1692h (validation of debts) (id. at 2-3); FDCPA § 808, 15 U.S.C. § 1692g

26   ////

27   ////

28   ////

14

1   (unfair practices) (id. at 3); and FDCPA § 807, 15 U.S.C. § 1692f (false or misleading

2   representations) (id. at 4).[6]

3         Rather than attempting to negate—or show an absence of evidence supporting—an

4   essential element of plaintiff's FDCPA claims, the County defendants argue that they are entitled

5   to summary judgment as a matter of law based on two affirmative defenses.  First, they argue that

6   they are not subject to the FDCPA because they fall under its "government actor" exemption, see

7   15 U.S.C. § 1692a(6)(C); and second, they argue that the FDCPA claims are barred by the statute

8   of limitations, see 15 U.S.C. § 1692k(d).  (ECF No. 159.1 at 4-6.)

9         One of the hazards of seeking summary judgment on these affirmative defenses[7]—which

10  neither side's briefs address—is that in order to assert an affirmative defense later in the case, the

11  party must have "'affirmatively state[d]' that defense in a responsive pleading."  Corbin v. Time

12  Warner Entertainment-Advance/Newhouse P'ship, 821 F.3d 1069, 1080 (9th Cir. 2016) (quoting

13  Fed. R. Civ. P. 8(c)(1)); Passa v. City of Columbus, No. 2:03-CV-81, 2007 WL 3125130, at *5

14  (S.D. Ohio Oct. 24, 2007) ("Exemptions to [remedial statutes like the FDCPA] must be

15  specifically pled as an affirmative defense or will be deemed waived.").

16        The County defendants' answer to the FAC does affirmatively state a (rather generic)

17  statute-of-limitations defense as their Second Affirmative Defense.  (ECF No. 17 at 4.)  However,

18  the only hint the answer contains that they *might* assert the government actor exemption is found

19  in a paragraph answering the allegations of the second cause of action:  ". . . County Defendants

20  deny they had any legal obligation to plaintiff under the Fair Debt Collection Practices Act

---

21    6    A fifth FDCPA claim, under 15 U.S.C. § 1692e (harassment or abuse), was asserted only

22  against previously dismissed defendant the City of Sacramento.  (ECF No. 12 at 4-5.)

23    7    Although the Ninth Circuit has not addressed whether the FDCPA's government actor

     exemption is an affirmative defense, courts generally view it as such.  See Schneider v. Bank of

24  Am. N.A., No. CIV. S-11-2953 LKK, 2014 WL 2118327, at *7 n.25 (E.D. Cal. May 21, 2014)

     (noting that the 9 separate exceptions to § 1692a(6) "debt collector" definition "are in the nature

25  of affirmative defenses"; Murphy v. Stephens & Michaels Associates, Inc., 2011 WL 1465761

     at *1 (S.D. Cal. 2011) ("whether Defendant falls within an exception to the 'debt collector'

26  definition under 15 U.S.C. Section 1692a is an affirmative defense"); see also Scott v. Jones, 964

     F.2d 314, 316 (4th Cir. 1992) ("Jones asserted the affirmative defense that he was not a 'debt

27  collector' as defined in the FDCPA . . . .").  And statutes-of-limitations defenses are categorically

     deemed affirmative defenses.  Fed. R. Civ. P. 8(c)(1).

28

('FDCPA') 15 U.S.C. §1692 and therefore deny each and every allegation contained therein which pertains to them." (Id. at 2.)  Because the bases for lacking any "legal obligation to plaintiff" under the FDCPA could be wide-ranging, and this language does not appear in the section of the answer devoted to Affirmative Defenses, the court cannot conclude that the County defendants adequately asserted the defense of exclusion from the definition of "debt collector" in their answer.

"However, defendants may raise an affirmative defense for the first time in a motion for summary judgment . . . if the delay does not prejudice the plaintiff." Magana v. Com. of the N. Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997), as amended (May 1, 1997).  "The failure to raise a defense is prejudicial if the party against whom the issue is raised may have tried its case differently or advanced distinct legal arguments against the issue." Heejoon Chung v. U.S. Bank, N.A., 250 F. Supp. 3d 658, 675 (D. Haw. 2017) (citing Sram Corp. v. Shimano, Inc., 25 F. App'x. 626, 629 (9th Cir. 2002)).

Although it is unclear why the County defendants would not assert their government actor defense right away, the court still finds the prolonged delay in this case not prejudicial given the nature of the defense and the unique circumstances of this case.  First, plaintiff himself does not argue that he was harmed by defendants' failure to raise this defense any earlier.  Rather, recognizing plaintiff's pro se status, the court took it upon itself to ensure that the defense could properly be considered at this stage.  Second, although this case has been going on a long time, there is every indication that the majority of plaintiff's time spent litigating the case was directed to arguing for default judgment based on what he viewed to be untimely responses, or filing unsupported motions challenging the undersigned's objectivity in the case.  (See, e.g., ECF No. 126 at 3-4 (noting that "center of this case [has] been getting fair judge" and that the case was therefore "on stand still").)  Defendants' earlier assertion of the government actor defense would not have deterred plaintiff from either focus.  Third and most importantly, the government actor defense, as it applies in this case, is not one that could be overcome through discovery efforts.  Plaintiff named the three County defendants in this suit precisely because they are government actors, and no amount of discovery on that subject would change the applicability of this defense

16

1    here.  See Ulin v. Lovell's Antique Gallery, No. 09-CV-2268-IEG (BGS), 2010 WL 2839417, at

2    *8 (S.D. Cal. Jul. 19, 2010) (barring defendant from asserting FLSA exemption argument for the

3    first time at summary judgment because plaintiffs were prejudiced by their inability to conduct

4    discovery into that issue).  Other than having the case terminated sooner, the court can see no

5    difference that an earlier assertion of this defense would have made.  Accordingly, the court

6    proceeds to consider the merits of the government actor defense on the present motion.

7                              **i.   Government Actor Exemption**

8          The FDCPA was enacted, among other reasons, "to eliminate abusive debt collection

9    practices by debt collectors."  15 U.S.C. § 1692(e).  "The FDCPA regulates the collection of

10   'debts' by 'debt collectors' by regulating the number and type of contacts a debt collector may

11   make with the debtor."  Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1031 (9th Cir. 2009).

12   The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate

13   commerce or the mails in any business the principal purpose of which is the collection of any

14   debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

15   asserted to be owed or due another."  15 U.S.C. § 1692a(6).  However, within the same definition,

16   the FDCPA explicitly excludes a number of categories of persons, among them "any officer or

17   employee of the United States or any State to the extent that collecting or attempting to collect

18   any debt is in the performance of his official duties."  15 U.S.C. § 1692a(6)(C).  This

19   exclusionary provision is sometimes referred to as the "government actor" exemption.  The Ninth

20   Circuit in Brannan v. United Student Aid Funds, Inc. recognized this exemption as applying "only

21   to an individual government official or employee who collects debts as part of his government

22   employment responsibilities."  94 F.3d 1260, 1263 (9th Cir. 1996).

23         Here, the FDCPA claims at issue are directed toward the County of Sacramento, the

24   Sacramento County Assessor, and the Sacramento County Tax Collector Ben Lamera.  (ECF

25   No. 12 at 1.)  Although the individual defendants (the County Assessor and the County Tax

26   Collector) are never mentioned in the body of the FAC, any FDCPA claims against them fail as a

27   matter of law because these individuals fall squarely under the government actor exemption.

28   ////

                                        17

In referring to "any officer or employee of . . . any State," the government actor exemption also explicitly extends to officers and employees of "any political subdivision of any [State]." 15 U.S.C. § 1692a(8) (defining the term "State" to include "any State" in the country, "or any political subdivision of any [State]"). In California, "counties are political subdivisions of the state." Brewster v. Cty. of Shasta, 112 F. Supp. 2d 1185, 1190 n.13 (E.D. Cal. 2000), aff'd, 275 F.3d 803 (9th Cir. 2001) (citing Moor v. Alameda Cty., 411 U.S. 693 (1973)). The County Assessor and the County Tax Collector are employees of Sacramento County whose titles alone make clear that they "collect[] debts as part of [their] government employment responsibilities." 15 U.S.C. § 1692a(6)(C). Thus, they are excluded from the FDCPA's definition of "debt collector." Because the FDCPA claims against them fail as a matter of law, the individual County defendants are entitled to summary judgment on these claims.

Whether Sacramento County itself is also a "government actor" exempt from the FDCPA is less clear from the text of the statute. However, Brannan itself—despite its seemingly straightforward statement that the exemption applies "only to an individual government official or employee"—appears to acknowledge the possibility that a government *entity* could also qualify under the exemption. See 94 F.3d at 1263 (interpreting the exemption as not covering a private nonprofit organization with a government contract because "it is not a government *agency or employee*" (emphasis added)). And the vast majority of courts to have considered the question have found the FDCPA to exclude government agencies and municipalities as "debt collectors."[8]

---

[8] See Oakley v. Williams, No. 1:20-cv-01336-CMA-NYW, 2021 WL 4173908, at *19 (D. Colo. Feb. 2, 2021) (concluding that Colorado Department of Corrections was not a "debt collector" under § 1692a(6)(C)); Tatten v. City & Cty. of Denver, No. 16-CV-01603-RBJ-NYW, 2017 WL 5172244, at *17 (D. Colo. Feb. 3, 2017) (dismissing FDCPA claims against the City and County of Denver because they are not "debt collectors" under § 1692a(6)(C)), report and recommendation adopted, 2017 WL 1435854 (D. Colo. Mar. 29, 2017), aff'd, 730 F. App'x 620 (10th Cir. 2018); Geiger v. Fed. Bureau of Prisons, 487 F. Supp. 2d 1155, 1159 (C.D. Cal. 2007) (holding that the Consumer Credit Protection Act ("CCPA"), which encompasses and shares definitional terms with the FDCPA, was inapplicable to plaintiff's claims "because [the federal Bureau of Prisons] is not a 'debt collector' within the meaning of CCPA" (citing § 1692a(6)(C)); United States v. Morgan, No. 1:02-CR-109, 2006 WL 2168173, at *6 n.7 (N.D. Ind. July 31, 2006) ("The Bureau of Prisons is not a 'debt collector' as defined in [the FDCPA]."); Hawes v. Lee, No. 1:05-CV-00134, 2005 WL 8165094, at *2 (M.D.N.C. Dec. 6, 2005) (holding that FDCPA claims against County Department of Social Services failed, noting that "'debt collector'

The undersigned joins with these courts in finding a political subdivision of a state, like

Sacramento County, excluded from the FDCPA "to the extent that collecting or attempting to

collect any debt is in the performance of [its] official duties." 15 U.S.C. § 1692a(6)(C).

The County defendants provide a declaration by a Senior Accounting Manager in the

Auditor-Controller Division of the Sacramento County Department of Finance, attesting that

Sacramento County issues real property tax bills, which in some instances contain "special

assessment charges for delinquent [City of Sacramento] code enforcement and nuisance

abatement activity charges as well as delinquent City utility charges" in addition to "delinquent

sewer charges imposed by the Sacramento Area Sewer District." (ECF No. 159.4, Emslie Decl.

¶ 3,[9] Ex. A (property tax bills issued to plaintiff for fiscal years 2012 – 2019).) These are the

charges that plaintiff cites as the basis for his FDCPA claims against the County. Defendants

---

exception also applies to government *agencies* attempting to collect debts in the performance of
their official duties"(emphasis original)); Georgeadis v. Cty. of Fairfield, No. C2-99-204, 2000
WL 1459418, at *3 (S.D. Ohio Sept. 25, 2000) (granting summary judgment for county, county
court, and county sheriff's department because they are not "debt collectors" under the FDCPA);
Jones v. Intuition, Inc., 12 F. Supp. 2d 775, 779 n.3 & 780 (W.D. Tenn. 1998) (noting that
§ 1692a(6)(C) "exempts government *entities* or officers from suit" (emphasis added) and
therefore holding state agency exempt from suit). But see Passa v. City of Columbus, No. 2:03-
CV-81, 2007 WL 3125130, at *6-10 (S.D. Ohio Oct. 24, 2007) (holding that § 1692a(6)(C)
applies "only to individuals, not to a governmental subdivision or agency").

9    Plaintiff briefly argues that Mr. Emslie's declaration should be "rejected" because it is
signed with an electronic signature. (ECF No. 160 at 11.) Plaintiff is correct that the declaration
is deficiently executed. This court's Local Rules only accept a non-attorney's electronic
signature (using "/s/" and that person's name) when it is accompanied by "a statement that
counsel has a signed original." L.R. 131(f). Mr. Emslie is not an attorney, and there is no
accompanying statement that the original signature is on file with counsel. (ECF No. 159.4 at 3.)

However, "[a]t the summary judgment stage, [the court does] not focus on the
admissibility of the evidence's form. [It] instead focus[es] on the admissibility of its contents."
Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). In other words, the court can consider
the evidence if its contents could be presented in an admissible form at trial. Id. at 1037.
Therefore, although the declaration was deficiently executed, the court understands it to contain
information about which Mr. Emslie has personal knowledge and is competent to testify and that
could be presented by defendants in an admissible form. See Dietle v. Miranda, No. 2:14-cv-
1728-WBS-AC-P, 2017 WL 387253, at *3-4 (E.D. Cal. Jan. 26, 2017) (considering declaration
on summary judgment despite deficient electronic signature), report and recommendation
adopted, 2017 WL 714390 (E.D. Cal. Feb. 22, 2017).

1   have presented sufficient evidence that the County—by issuing the subject property tax bills

2   through its Department of Finance—was acting in the performance of its official duties.

3   Accordingly, the County also is not a "debt collector" subject to the FDCPA, under

4   § 1692a(6)(C).  Because the FDCPA claims against the County must thus fail as a matter of law,

5   all County defendants are entitled to summary judgment on these claims.[10]

6             *2.   California Health and Safety Code § 5473 & "Public Corruption" Claims*

7         The final two sets of claims also warrant summary judgment for defendants.  In scattered

8   parts of the FAC, plaintiff cites to California Health and Safety Code § 5473 in connection with

9   allegations that the County improperly added "phony" City utilities debts to his property tax bills.

10  (ECF No. 12 at 2, 8, 10.)  To the extent the FAC can be read as asserting a viable claim under

11  § 5473, such claim does not lie against the County based on the evidence before the court.

12        Section 5473 is found in the portion of the California Health and Safety Code that allows

13  local entities to prescribe and collect fees for water, sewer, and sanitation services that the entities

14  furnish to residents, and to collect such fees on the property tax roll (if they so choose) by

15  following certain procedures.  See Cal. Health & Safety Code art. 4, "Sanitation and Sewerage

16  Systems," §§ 5470–5474.10 (hereinafter "article 4").  Specifically, § 5471 "grants local entities

17  power to prescribe and collect fees" for these services, while § 5473 "grants them the power to

18  have such charges collected on the tax roll."  Util. Audit Co. v. City of Los Angeles, 112 Cal.

19  App. 4th 950, 957 (2003).

20  _____

21  [10]     The court therefore need not address defendants' alternative statute-of-limitations
    argument.  However, the court notes that—contrary to defendants' assertion—the most recent of
22  the contested property tax bills preceding the filing of this case on March 14, 2019 includes a
    listed "delinquent sewer" charge.  (ECF No. 159.4 at 11 (2018-2019 secured property tax bill).)
23  There is no evidence of when this property tax bill was issued, but county tax bills for secured
    property must be mailed on or before November 1 of each year.  See Cal. Rev. & Tax. Code
24  § 2610.5.  Assuming this bill was sent to plaintiff after March 14, 2018, the claims at least as to
    that bill would appear timely.  See Lyons v. Michael & Assocs., 824 F.3d 1169, 1171 (9th Cir.
25  2016) ("A claim under the FDCPA must be brought 'within one year from the date on which the
    violation occurs.'" (quoting 15 U.S.C. § 1692k(d)).  That most recent bill could then also
26  potentially save the claims based on any time-barred earlier bills as well.  See Joseph v. J.J. Mac
    Intyre Companies, L.L.C., 281 F. Supp. 2d 1156, 1159-62 (N.D. Cal. 2003) (discussing mixed
27  views of "continuing violation theory" for FDCPA statute of limitation and finding the theory
    applicable in that case).
28
                                           20

In order to collect water and sewer/sanitation service charges via the tax roll, alongside general taxes, the service-providing entity must elect to do so through an ordinance or resolution approved by a two-thirds vote of the members of its legislative body.  Cal. Health & Safety Code § 5473.  The service-providing entity may also limit this election to apply "only to delinquent charges."  Id. § 5473a.  A service-providing entity that elects to collect these service charges and/or service-fee delinquency charges through the tax roll must follow a number of procedures each year—including preparing a "written report" describing the parcel of real property receiving the services and the amount of the charge—before its legislative body makes a final determination about whether each charge should be collected on the tax roll that year.  Id. §§ 5473.1–5473.3.  Upon the service-providing entity's final determination, a copy of its approved written report of the properties to be charged is "file[d] with the county auditor" who then "shall enter the amounts of the charges against the respective lots or parcels of land as they appear on the current assessment roll."  Id. § 5473.4.

Here, plaintiff's § 5473 claim arises from the City of Sacramento providing delinquent City "utilities" charges to the County for collection through the County property tax roll, repeatedly, over many years.  (ECF No. 12 at 2 ("Defendant City of Sacramento at some point provided utility bill phony debt to Defendant County of Sacramento." (citing § 5473)); id. at 13 (email from City of Sacramento Department of Utilities attaching special assessment letters communicating "the City's intention to transfer a portion of the account's delinquent utility balance" to the County property taxes).)  Though not stated expressly in the FAC, that claim also seems to arise from delinquent sewer service charges transferred to the County taxes from the Sacramento Area Sewer District ("SASD"), a local sewer utility formerly known as the Sacramento County Sanitation District No. 1.  (ECF No. 159.4, Emslie Decl. ¶ 6; id. at 5-11 (property tax bills showing City charges and SASD/CSD delinquent sewer charges).)  See Cal. Health & Safety Code § 4730.11 (setting composition of the SASD governing board).

With its motion for summary judgment, the County provides evidence that these delinquent utilities charges and delinquent sewer charges were indeed transferred to the County and added to plaintiff's property tax bills from 2012 – 2019.  (Emslie Decl. ¶¶ 3, 6; id. at 5-11.)

21

The utilities services were provided to plaintiff's property by the City of Sacramento, and the sewer services were provided by the SASD.  (Emslie Decl. ¶ 3; ECF No. 159.3 Floyd Decl. ¶ 2.) The delinquency charges for plaintiff's unpaid service-fee obligations to those entities were transferred to the County at the City's and SASD's requests.  (Emslie Decl. ¶ 6.)  Assuming that article 4 governs the collection of the charges in question, it seems that this transference occurred as prescribed in §§ 5473.1–5473.4 discussed above.[11]  Whether the City or SASD had a duty to comply, or actually complied, with article 4 is not before the court because the only claim to be resolved on this motion is the purported § 5473 claim against *the County*.

Neither the County auditor nor any other County official or governing body had "a role in determining, reviewing, or approving" the amount of the charges transferred from the City or the SASD.  (Emslie Decl. ¶ 5.)  Nor was any County review of these transferred charges required under article 4 prior to their addition to the property tax roll each year.  Notwithstanding plaintiff's frustration with the lack of independent review, § 5473.4 plainly makes the County auditor's addition of the fees automatic and nondiscretionary.  See Cal. Health & Safety Code § 5473.4 (upon receipt of entity's final determination of charges, "the county auditor shall enter the amounts of the charges against the respective lots or parcels of land").

Thus, any claim plaintiff might arguably have under § 5473 would lie only against the City and/or SASD, the service-providing entities in this scenario, not against the County. Contrary to plaintiff's bare allegations, the evidence submitted shows that the County Board of Supervisors—the legislative body for the County of Sacramento—had no role to play in approving the charges at issue for inclusion on the property tax roll because the charges were not

---

[11]    Because it is unclear from the record what "utilities" the City charges were for, it is unclear whether article 4 (and § 5473) actually applies to the City charges in question.  However, the SASD likely qualifies an entity covered by article 4.  See Cal. Health & Safety Code § 5470(e) (defining "entity" to mean "counties, cities and counties, cities, sanitary districts, county sanitation districts, county service areas, sewer maintenance districts, and other public corporations and districts authorized to acquire, construct, maintain and operate sanitary sewers and sewerage systems").

1  for services provided *by the County*.[12]  (Floyd Decl. ¶ 2 (averring that the utilities charges at issue

2  "are charged by the City of Sacramento, not the County of Sacramento," and the "[s]ewer

3  services are provided by the [SASD], not the County of Sacramento").)  Thus, the County's role

4  was purely ministerial and does not implicate § 5473.

5          In opposition, plaintiff supplies no evidence to demonstrate a genuine dispute of material

6  fact as to the nature of the County's role in adding the contested charges to the tax bills.  Indeed,

7  plaintiff provides no evidence of the type contemplated for summary adjudication at all, see Fed.

8  R. Civ. P. 56(c)(1), other than his own declaration which merely repeats his legal arguments (ECF

9  No. 160 at 20-22).  Plaintiff vehemently argues that the County must prove that it can add charges

10  to his property taxes without records of what those charges are for.  (Id. at 10, 17-18.)  However,

11  this gets the law backward.  The County has, via this motion, met its initial burden to produce

12  evidence showing that *plaintiff*—who carries the ultimate burden of persuasion on his claims at

13  trial—lacks evidence that § 5473 should apply to the County for the charges at issue, in the first

14  place.  See Nissan, 210 F.3d at 1102.  Moreover, the law as explained above demonstrates that it

15  is the service-provider entities who must satisfy the various procedural requirements for adding

16  charges to the tax rolls (including providing the "written report" of the charges before

17  transmitting them for tax assessment), not the County.  Plaintiff, in response, has not established

18  the existence of a material factual dispute.  Accordingly, summary judgment should be entered

19  for the County as to any claims under § 5473.[13]  See Matsushita, 475 U.S. at 585-87.

20  _____

21  [12]      Again, assuming article 4 applies at all, the governing legislative bodies of the City of
   Sacramento and of SASD would be the ones responsible for compliance in electing to collect

22  utility and sewer charges through the tax rolls.  One nuance unacknowledged by defendants is
   that the members of the County Board of Supervisors are, by law, also members of the SASD

23  board of directors.  See Cal. Health & Safety Code § 4730.11 (establishing composition of
   SASD's governing board).  However, even if the same individuals are members of both boards,

24  they would not be acting in their capacity as "the County Board of Supervisors" when making
   decisions for the SASD.

25

26  [13]      In addition, it is not clear that one can even bring a direct cause of action for violation of
   § 5473.  Article 4 specifically provides a cause of action for property owners to recover any

27  charges (a) previously paid under protest (b) which the provider-entity's legislative body refuses
   to refund:

28  *(cont'd)*

Plaintiff's "public corruption" claim against the County defendants essentially mirrors his § 5473 claim—alleging that the County aided the City in its corrupt acts by placing uncorroborated debts on the property tax rolls. (ECF No. 12 at 5, 8.) Plaintiff cites no legal basis for a "public corruption" cause of action, and in any event, the County has shown that it acted pursuant to a statutory ministerial duty by placing the disputed debts on the tax bills. Accordingly, summary judgment should be entered for the County defendants on this claim as well.

### C. <u>Plaintiff's Opposition Arguments</u>

Plaintiff's only substantive opposition to the motion for summary judgment is addressed above. The rest of plaintiff's opposition papers consist of arguments regarding the timeliness of various responses (addressed in earlier sections above), the undersigned's purported prejudice (also addressed above), and scattered assertions that he was unable to conduct the necessary depositions to prosecute his case. (ECF No. 160.)

Plaintiff makes the same arguments regarding his inability to conduct depositions that he made in his September 2021 opposition to the motion to modify the scheduling order. (<u>Compare</u> <u>id.</u> at 8, 11, <u>with</u> ECF No. 126 at 3-4, 9-12.) In order to give plaintiff more time to conduct depositions, the Schedule Modification Order re-opened discovery (which had originally closed on July 30, 2021) for one month and informed plaintiff of the required steps to serve a deposition notice. (ECF No. 139 at 7-8 (re-opening discovery specifically to "permit[] plaintiff to properly notice and conduct the desired depositions").) Despite this opportunity, at no point—either before or after discovery was re-opened—has plaintiff "served County Defendants with a

---

> After fees, rates, tolls, rentals or other charges are fixed pursuant to this article, any person may pay such fees, rates, tolls, rentals or other charges under protest and bring an action against the city or city and county in the superior court to recover any money which the legislative body refuses to refund. Payments made and actions brought under this section, shall be made and brought in the manner provided for payment of taxes under protest and actions for refund thereof in Article 2, Chapter 5, Part 9, of Division 1 of the Revenue and Taxation Code, insofar as those provisions are applicable.

Cal. Health & Safety Code § 5472. Section 5473 contains no language creating a private right of action separate from the process provided in § 5472.

1  deposition notice to depose any County representative," or "identified any individuals that might

2  be deposed, or proposed dates when depositions might occur." (Floyd Decl. ¶¶ 3, 6.)

3  Accordingly, the undersigned sees no reason to construe plaintiff's opposition arguments as a

4  Rule 56(d) motion for a continuance to conduct additional discovery; nor would good cause

5  support granting such a continuance, given plaintiff's failure to take advantage of the previous

6  extension provided.

7      In sum, the undersigned recommends granting summary judgment for each of the County

8  defendants on all claims asserted against them in the FAC.

9                                    **ORDER**

10     For the above reasons, it is HEREBY ORDERED that:

11   1.  Plaintiff's motion to vacate the court's October 15, 2021 order (ECF No. 143) is construed

12       as a successive motion for judicial recusal and is DENIED; and

13   2.  In light of the below recommendations, all motion practice in this action is STAYED

14       pending resolution of these findings and recommendations. With the exception of

15       objections to the findings and recommendations and any non-frivolous motions for

16       emergency relief, the court will not entertain or respond to any motions or other filings

17       until the findings and recommendations are resolved.

18                               **RECOMMENDATIONS**

19     Further, it is HEREBY RECOMMENDED that:

20   1.  Plaintiff's motion for leave to amend the complaint, separately docketed as two events

21       (ECF Nos. 138, 141) be DENIED;

22   2.  Plaintiff's amended ex parte application for default judgment (ECF No. 163) be DENIED;

23   3.  Defendants' motion for summary judgment (ECF No. 159) be GRANTED;

24   4.  Judgment be entered in favor of defendants the County of Sacramento; Sacramento

25       County Assessor; and Sacramento County Tax Collector Ben Lamera on all claims

26       asserted against them in the First Amended Complaint; and

27   5.  The Clerk of Court be directed to CLOSE this case.

28  ////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  January 24, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.nara.466

26